**Lloyd [sic] McENTIRE, Appellant,**

v.

**The INDIANA NATIONAL BANK, Appellee.**

**No. 4–783A219.**

Court of Appeals of Indiana, Fourth District.

Dec. 19, 1984.

Rehearing Denied Feb. 8, 1985.

**1218**

Jay P. Kennedy, Kroger, Gardis & Regas, Indianapolis, for appellant.

Judith Kay Brown, Indianapolis, for appellee.

MILLER, Presiding Judge.

Indiana National Bank (Bank) was victorious in its pursuit of a deficiency judgment on a guaranty when it was awarded summary judgment against guarantors Loyd McEntire (McEntire), Jerry Galbreath, and Ernest K. Jones. The trial court found the three individuals liable upon their unconditional guaranty to assure payments of an equipment lease executed by McEntire Drywall, Inc. (Drywall), which company petitioned for relief in bankruptcy before successful completion of its lease agreement. McEntire, the lone appellant, oppugns the result reached by the trial court, arguing the summary judgment was improper because of both incorrect applications of the law and the existence of material issues of fact. We agree and reverse and remand for further proceedings not inconsistent with our opinion herein.

## ISSUES

McEntire raises the following as the points of dispute incorrectly resolved by the trial court:

1) Does the guaranty create or incorporate a security interest so as to subject the Bank to the provisions of Article 9 of Indiana's commercial code?

2) Is McEntire, as guarantor of Drywall's obligation, a "debtor" as defined in IND.CODE 26-1-9-105(1)(d) and therefore entitled to notice of the disposition by the Bank of the leased equipment as required in IND.CODE 26-1-9-504(3)?

3) Did McEntire waive the notice of disposition of the collateral by the terms of the guaranty?

4) Was it proper for the trial court to grant summary judgment when McEntire had raised the defense that the Bank's disposition of the collateral had been commercially unreasonable?

## FACTS

On July 9, 1980, the Bank and Drywall entered into an "Equipment Lease Agreement" whereby the company agreed to make sixty monthly payments of $175.88 for a telephone system priced at $7,106.00. Drywall also paid $1.00 for the option to purchase the equipment at the end of the lease for $710.60. At the same time the lease was executed, McEntire, Jerry Galbreath and Ernest K. Jones signed an unconditional guaranty upon liabilities of Drywall to the Bank, to the extent of $7,106.00.

In 1982, Drywall filed for bankruptcy, and the trustee in bankruptcy abandoned the telephone system to the Bank. The Bank, without notice to the individual guarantors or any attempt at advertisement, sold the system back to the original vendor at a private sale for $1050. The Bank then instituted suit against the guarantors for a deficiency judgment in the amount of $4,608.11. All the guarantors raised two defenses to the action, lack of notice of the sale and lack of commercial reasonableness of the sale itself. The Bank moved for summary judgment, granted by the court in the following terms:

"1. That no failure of consideration exist [sic] for the guaranty contract which is the subject of this action.

2. That the subject guaranty contract is a separate contract from that of the lease agreement and that the guaranty does not create or incorporate a security interest and is not subject to the provisions of Article 9 of the Uniform Commercial Code.

3. That the Defendants, Lloyd [sic] McEntire, Jerry Galbreath and Ernest Jones, are not 'debtors' within the scope of I.C. Section 26–1–9–504(3) and have under the terms of the guaranty waived their right to object to the manner of disposition of the leased equipment.

4. That the subject guaranty is an unconditional guaranty of payment and Defendants have no right thereunder to compel the Plaintiff to first proceed against the principal debtor on the leased equipment.

5. That Plaintiff by affidavit and the pleadings filed herein has established those elements necessary to recover on the lease and guaranty contracts as set forth in its Complaint.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Plaintiff, The Indiana National Bank, have and recover a judgment from the Defendants, Lloyd [sic] McEntire and Jerry Galbreath, jointly and severally, in the amount of Four Thousand Six Hundred Eight and 11/100 Dollars ($4,608.11), together with interest and the costs of this action, without relief from valuation and appraisement laws."

Record, pp. 158–59. McEntire is the sole appellant before us, arguing for reversal.

### DECISION

▬▬ Summary judgment proceedings in this state are governed by Ind.Rules of Procedure, Trial Rule 56, which clearly states that

"[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

T.R. 56(C). If there are any doubts as to whether any issue of material facts exists with regard to the claim, a motion for summary judgment must be resolved in the nonmovant's favor. To determine if such doubts indeed exist, the evidence is to be construed liberally in the nonmovant's favor. *Woodward Insurance, Inc. v. White* (1982), Ind., 437 N.E.2d 59; *Bridgewater v. Economy Engineering Co.* (1984), Ind. App., 464 N.E.2d 14, *trans. pending.* Once having determined no issues of material fact exist, we must still determine that the trial court has correctly applied the law to those facts. *Krueger v. Bailey* (1980), Ind.App., 406 N.E.2d 665.

It is with this standard then that we review two of the trial court's conclusions—that this transaction is not subject to Article 9 of the Uniform Commercial Code and that even if Article 9 applies, McEntire is not protected thereunder.[1] Under the circumstances and the issues presented herein, we must deal with both inquiries included in our standard of review because there is a genuine issue over material facts and the trial court incorrectly applied the law.

*Application of Article 9 of the U.C.C.*

▬▬ The guaranty executed by McEntire very clearly covers the following of Drywall's obligations:

"FOR VALUE RECEIVED and in consideration of credit given or to be given, or of advances made or to be made, or of other financial accommodation afforded or to be afforded to McEntire Drywall, Inc. (hereinafter referred to as the 'Debtor') by The Indiana National Bank, Indianapolis, Indiana (hereinafter called 'Bank'), the undersigned hereby guarantees the full and prompt payment, when due, whether by acceleration or otherwise, together with interest and all costs, expenses and attorneys' fees, of *any and all notes, bills, drafts, commercial paper and other obligations of the Debtor of every kind* (herein collectively called 'Liabilities') whether signed, accepted, drawn or endorsed by the Debtor, *that are or shall be owned, held or acquired,*

---

**1.** The court's other two conclusions, regarding lack of consideration and the Bank's failure to proceed first against Drywall as the principal debtor, are not at issue here and are not determinative of our decision to reverse. We will therefore not address these points any further.

*whether through discount, overdraft, purchase, direct loan, or as collateral or otherwise by Bank,* either for the Debtor or for any holder thereof, provided that the Liability thereon and hereon of the undersigned shall not exceed the principal sum of Seven Thousand One Hundred Six and 00/100 Dollars ($7,106.00) at any one time outstanding together with interest thereon and all costs, expenses and attorneys' fees incurred by the Bank in the enforcement of the Liabilities."

Record, p. 13. (Emphasis added.) When interpreting a guaranty, we follow the rules of construction applicable to any other contract. Thus, in the absence of ambiguity in the language used, we construe a guaranty's provisions as a matter of law. *Goeke v. Merchants National Bank & Trust Co. of Indianapolis,* (1984) Ind.App., 467 N.E.2d 760; *Loudermilk v. Casey,* (1982) Ind.App., 441 N.E.2d 1379. The terms of this particular guaranty very clearly contemplate the equipment lease agreement at issue herein and must have been so intended. However, our inquiry continues because the issue remains whether the guaranty comes within the ambit of the U.C.C. provisions regarding security agreements.

Indiana's version of the U.C.C. provides the following with respect to categorizing a purported lease as an actual security agreement:

"Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

IND.CODE 26–1–1–201(37). This statute clearly provides two ways of determining whether a lease in actuality is a conditional sale, a vehicle for securing an interest in an item the "lessee" is purchasing from the "lessor." The distinguishing difference between the two foci of I.C. 26–1–1–201(37) devolves upon the terms of any option to purchase included in the agreement.

Within the terms of subsection (b), if the lease provides an option whereby the lessee can purchase the property for no additional or for a nominal consideration, the lease is, as a matter of law, a security agreement. *E.g., Bolen v. Mid-Continent Refrigerator Co.,* (1980) Ind.App., 411 N.E.2d 1255. However, unlike the situation in *Bolen,* where the consideration set forth was $1.00 and sales tax, we have no clear-cut evidence here that Drywall's option price on the telephone system, of $710.60, was "nominal consideration." We would have no problems if the sum here were very small in absolute terms, as in *Bolen,* but because $710.60 is not of such character, we can find it "nominal" only if it is insubstantial in relation to the fair market value of the telephone system at the time the option would have been exercised. *See Matter of Marhoefer Packing Co.,* (7th Cir.1982) 674 F.2d 1139. We have no evidence in the record before us of what the fair market value of the equipment would have been at the time of the option, only the purchase price. (The matter may indeed have been introduced at the summary judgment hearing, but there is no transcript before us.) Therefore, we cannot say, as a matter of law, that the lease here is a security agreement as described in subsection (b) of I.C. 26–1–1–201(37). However, neither could the trial court declare it was not because the second inquiry remained to be resolved.

Under I.C. 26–1–1–201(37), subsection (a) provides for a determination upon the facts of each case that the option to purchase herein does *not* make the lease a security agreement. *Matter of Marhoefer Packing Co., supra,* 674 F.2d 1139. In contract law, the intention of the parties controls our decisions regarding the substance of agreements, and that intention is expressed by the clear language of the contract. *See, e.g., Jenkins v. King,* (1946)

224 Ind. 164, 65 N.E.2d 121; *Citizens Bank & Trust Co. of Washington v. Gibson,* (1984) Ind.App., 463 N.E.2d 276 *trans. pending; R.R. Donnelley & Sons, Co. v. Henry-Williams, Inc.,* (1981) Ind.App., 422 N.E.2d 353. If that contract language is unambiguous, then construction of the agreement is a question of law for the court. *E.g., Loudermilk v. Casey, supra,* 441 N.E.2d 1379. These same rules of construction apply when deciding whether a lease is truly a rental agreement or is instead a security agreement. *State Bank of Burleigh County Trust Co. v. All-American Sub, Inc.,* (1980) N.D., 289 N.W.2d 772. We have applied these very same rules to the lease herein and have found it to be a security agreement.

■ The facts of each agreement control any decisions we would make toward discerning whether two parties intended to enter into a security agreement. I.C. 26–1–1–201(37). And the facts that could be pertinent to each such determination would be difficult to catalog. However, the number present here is sufficiently overwhelming to indicate the Bank intended for Drywall to execute a security agreement for the purchase of the telephone equipment. The equipment lease here includes the following telltale provisions:·

1) an option to purchase the equipment;
2) the Bank purchased the equipment from the supplier, Executone Communications;
3) the Bank required third parties to sign a guaranty;
4) Drywall was responsible for paying for insurance, taxes and related expenses;
5) Drywall bore all risk of loss;
6) the $10,552.80 total rent equals cost of the equipment plus interest;
7) upon default, McEntire Drywall, Inc. could be held liable either for the total unpaid rent or the balance of rent remaining, less proceeds realized on sale of the equipment;
8) the option price is less than 25% of the list price ("economic realities" test).

*State Bank of Burleigh County Trust Co. v. All-American Sub, Inc., supra,* 289 N.W.2d 772; J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 22–3 (1980). Under these circumstances, we are compelled to say, as a matter of law, the parties intended to enter into a security agreement. The trial court's declaration to the contrary was incorrect, thus making his conclusion that Article 9 of the U.C.C. did not apply erroneous.

*Guarantor as "Debtor" and Entitled to Notice*

Indiana's version of Article 9 of the U.C.C. is found at IND.CODE 26–1–9–101 *et seq.* McEntire's argument that he was entitled to notice of the Bank's sale of the equipment devolves upon two provisions of Article 9, I.C. 26–1–9–105(d) and I.C. 26–1–9–504(3). I.C. 25–1–9–504(3) mandates what notice shall be sent regarding a secured party's disposition of collateral after default upon the agreement:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. *Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor,* and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recog-

nized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

(Emphasis added.) The telephone equipment was not perishable, and there was no evidence it would have declined rapidly in value or that it was customarily sold on a recognized market. Therefore, the Bank was required to send reasonable notice of the sale to the debtor. The question remains whether McEntire was such a "debtor," entitled to notice.

■■■■■ "Debtor" for purposes of secured transactions is defined at I.C. 26–1–9–105(1)(d):

" 'Debtor' means the person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts, contract rights or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision of the Article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires ...."

Under Indiana law, a guaranty is an independent contract to assume liability for performance of a duty or payment of a debt if the primary obligor defaults in performance or payment. *Cargill, Inc. v. Buis*, (7th Cir.1976) 543 F.2d 584; *Indiana University v. Indiana Bonding & Surety Co.* (1981), Ind.App., 416 N.E.2d 1275; *Davis v. B.C.L. Enterprises, Inc.* (1980), Ind. App., 406 N.E.2d 1204. Thus, upon default of his principal, a guarantor becomes primarily liable on the debt, subject to the type of guaranty executed (conditional or unconditional) and to conditions contained in the agreement itself. *Indiana University v. Indiana Bonding & Surety Co.*, *supra*; *Bowyer v. Clark Equipment Co.* (1976), 171 Ind.App. 431, 357 N.E.2d 290. A guarantor then indeed "owes payment or other performance of the obligation secured," irrespective of his ownership of or rights in the collateral. This state of af-

fairs qualifies a guarantor for the status of "debtor" within the terms of I.C. 26–1–9–105(1)(d). By adopting this view, we are also aligning ourselves with the majority of jurisdictions who have also addressed the issue. *See, e.g., Ford Motor Credit Co. v. Lototsky* (E.D.Pa.1982), 549 F.Supp. 996; *National Acceptance Co. of America v. Medlin* (N.D.Ill.1982) 538 F.Supp. 585; *Commercial Credit Corp. v. Lane* (M.D. Fla.1979) 466 F.Supp. 1326; *First Alabama Bank of Montgomery, N.A. v. Parsons* (1980), Ala.Civ.App., 390 So.2d 640; *Walter E. Heller & Co. v. Wilkerson* (1980), Colo.App., 627 P.2d 773; *Barnett Bank of Tallahassee v. Campbell* (1981) Fla.App., 402 So.2d 12; *Barbree v. Allis-Chalmers Corp.* (1982), 250 Ga. 409, 297 S.E.2d 465; *Liberty Bank v. Honolulu Providoring Inc.* (1982), 65 Haw. 273, 650 P.2d 576; *Commercial Discount Corp. v. Bayer* (1978), 57 Ill.App.3d 295, 14 Ill.Dec. 647, 372 N.E.2d 926; *Clune Equipment Leasing Corp. v. Spangler* (1981), Mo. App., 615 S.W.2d 106; *DeLay First National Bank & Trust Co. v. Jacobson Appliance Co.* (1976), 196 Neb. 398, 243 N.W.2d 745; *Chase Manhattan Bank v. Natarelli* (1977), 93 Misc.2d 78, 401 N.Y. S.2d 404; *see also First National Bank of Denver v. Cillessen* (1980), Colo.App., 622 P.2d 598 (co-signers); *Savings Bank of New Britain v. Booze* (1977) 34 Conn.Sup. 632, 382 A.2d 226 (accommodation maker); *First National Bank & Trust Co. v. Kunes* (1973) 230 Ga. 888, 199 S.E.2d 776 (indemnitor); *T & W Ice Cream Inc. v. Carriage Barn, Inc.* (1969), 107 N.J.Super. 328, 258 A.2d 162 (accommodation endorser); *O'Hara v. First National Bank of Fort Worth* (1980), Tex.Civ.App., 613 S.W.2d 306 (accommodation maker); *Rhoten v. United Virginia Bank* (1980) 221 Va. 222, 269 S.E.2d 781 (co-maker).

Concurrent with a guarantor's assumption of the status of "debtor" runs the protection of such debtor under I.C. 26–1–9–504(3). This protection includes the debtor's entitlement to reasonable notification of the disposition of the collateral. This principle is adhered to by most of the above-cited cases from other jurisdictions

but was probably best explained in the seminal case of *Chase Manhattan Bank v. Natarelli, supra,* 93 Misc.2d 78, 401 N.Y. S.2d 404. In that case, the New York Supreme Court explained that one of the U.C.C.'s goals was to make distinctions along functional rather than formal lines, and thus, a guarantor should be considered a debtor within Article 9 and be similarly protected despite having only a conditional interest in the collateral. The court went on to say that requiring reasonable notice be sent to guarantors imposes no undue burden upon secured parties nor unduly prejudices them inasmuch as guaranties are executed at the request of and for the benefit of those same secured parties.

We are aware of authority that denies guarantors the right to notice under these circumstances. These cases either refuse to equate a guarantor with a debtor or refuse to find I.C. 26–1–9–504(3) applicable to debtors who do not own the collateral. *See First National Park Bank v. Johnson* (9th Cir.1977), 553 F.2d 599; *A.J. Armstrong, Inc. v. Janburt Embroidery Corp.* (1967), 97 N.J.Super. 246, 234 A.2d 737 (accommodation parties).[2] We believe the realities of commercial dealings require we adhere to the majority position rather than making fine distinctions based merely upon semantics. Our result is that the trial court here erred in ruling McEntire is not a debtor. He became a debtor upon the company's default and was entitled to notice of the Bank's disposition of the equipment.

### Waiver

The Bank urges that, regardless of McEntire's characterization as "debtor" and his entitlement to notice, he waived such notice by the terms of the guaranty. We disagree.

IND.CODE 26–1–9–501(3) does not allow the debtor to waive his right to notice of sale. It states:

"To the extent that they give rights to the debtor and impose duties on the secured party, *the rules stated in the subsections referred to below may not be waived or varied except as provided with respect to compulsory disposition of collateral* (subsection (1) of section 9–505) *and with respect to redemption of collateral* (section 9–506) but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable:

(a) . . . accounting for surplus proceeds of collateral;

(b) . . . disposition of collateral;

(c) . . . acceptance of collateral as discharge of obligation;

(d) . . . redemption of collateral; and

(e) . . . secured party's liability for failure to comply with this Part."

(Emphasis added.) Nor can the debtor waive this right by provision in the security agreement. *Hall v. Owen County State Bank,* (1977) 175 Ind.App. 150, 370 N.E.2d 918. We believe the same is applicable to McEntire who purportedly waived his right to notice in the guaranty. Under the terms of I.C. 26–1–9–501(3), he cannot waive this right for virtually the same reasons he was entitled to notice in the first place, the U.C.C. prizes function over form. If we were to find otherwise, a secured party could avoid the protection afforded debtors by the mere expedient of requiring a guaranty be executed with each security agreement. Such result would then hinge upon semantics rather than actualities. We again follow the majority when we decide that McEntire could not waive his right to notice. *See, e.g., Ford Motor Credit Co. v. Lototsky, supra,* 549 F.Supp. 996; *Commercial Discount Corp. v. King,* (N.D.Ill.

---

**2.** Bank has cited us to several cases from Georgia in support of this proposition, *Allis-Chalmers Corp. v. Barbree* (1982), 162 Ga.App. 512, 291 S.E.2d 453; *McNulty v. Codd* (1981), 157 Ga.App. 8, 276 S.E.2d 73; *Brinson v. Commercial Bank* (1976), 138 Ga.App. 177, 225 S.E.2d 701. They have all been overruled by *Barbree v. Allis-Chalmers Corp.* (1982) 250 Ga. 409, 297 S.E.2d 465.

1981) 515 F.Supp. 988; *Commercial Credit Corp. v. Lane, supra,* 466 F.Supp. 1326; *Barnett Bank of Tallahassee v. Campbell, supra,* 402 So.2d 12; *Clune Equipment Leasing Corp. v. Spangler, supra,* 615 S.W.2d 106; *Savings Bank of New Britain v. Booze, supra,* 34 Conn.Sup. 632, 382 A.2d 226 (accommodation maker); *contra, United States v. Kurtz* (E.D.Pa.1981), 525 F.Supp. 734, *affd.* (3rd Cir.1982), 688 F.2d 827, *cert. denied* (1982) 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (interpreting California law); *National Acceptance Co. of America v. Wechsler* (N.D.Ill.1980), 489 F.Supp. 642; *Vickers v. Chrysler Credit Corp.* (1981) 158 Ga.App. 434, 280 S.E.2d 842; *Continental Leasing Corp. v. Lebo* (1970), 217 Pa.Super. 356, 272 A.2d 193.[3]

The Bank argues that the nature of McEntire's guaranty, as unconditional, requires that we find him absolutely liable without regard to the disposition of the collateral and cites authority in support thereof. *E.g., Fireman's Fund Insurance Co. v. Joseph J. Biafore, Inc.,* (3d Cir.1975) 526 F.2d 170; *Paul Revere Protective Life Insurance Co. v. Weis,* (E.D.Pa.1981) 535 F.Supp. 379; *Continental Leasing Corp. v. Lebo, supra,* 217 Pa.Super. 356, 272 A.2d 193. With all due respect to the courts in those cases, we believe they erred in their interpretation of the function of an unconditional guaranty.

▆ Federal courts have defined "unconditional guaranty" in the following terms:

"Contracts of guaranty are divided into two kinds. One is absolute or unconditional and the other is conditional.

An absolute guaranty is an unconditional undertaking on the part of the guarantor that the person primarily obligated will make payment or will perform, and such a guarantor is liable immediately upon default of the principal without notice. A conditional guaranty is an undertaking to pay or perform if payment of performance cannot be obtained from the principal obligor by reasonable diligence.... An absolute guaranty, unlike a conditional one, casts no duty upon the creditor or holder of the obligation to attempt collection from the principal debtor before looking to the guarantor.... Both presuppose default by the principal."

*Pavlantos v. Garoufalis,* (10th Cir.1937) 89 F.2d 203, 206; *United States v. Willis,* (6th Cir.1979) 593 F.2d 247; *Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corp.,* (10th Cir.1957) 243 F.2d 196; *U.S.A., Etc. v. Chatlin's Department Store, Inc.,* (E.D.Pa.1980) 506 F.Supp. 108. The practical ramification of the distinction with the term "conditional" is that the unconditional guarantor automatically becomes the primary obligor upon default of his principal and is not entitled to notice thereof. *See Bowyer v. Clark Equipment Co., supra,* 171 Ind.App. 431, 357 N.E.2d 290. He therefore does not wish to protect himself by relying on the solvency of his principal. *Id.* Confusion seems to arise, however, by the very nature of a guaranty, not between the two kinds.

▆ There is no question a guarantor may waive notice of treatment, release, or sale of collateral while the terms of the

---

**3.** The parties to the guaranty seem to have contemplated just such a conclusion when they limited McEntire's waiver as follows:

"(e) in the event of the nonpayment when due, whether by acceleration or otherwise, of any of the Liabilities, or in the event of default in the performance of any obligation comprised in the collateral, to realize on the collateral or any part thereof, as a whole or in such parcels or subdivided interests as Bank may elect, at any public or private sale or sales, for cash or on credit, or for future delivery, without demand, advertisement or notice of the time, or place or sale or any adjournment thereof (*the undersigned hereby*

*waives any such demand, advertisement and notice to the extent permitted by law* ), or by foreclosure or otherwise, or to forebear from realizing thereon, all as Bank in its uncontrolled discretion may deem proper, and to purchase all or any part of the collateral for its own account at any public sale or foreclosure, such powers to be exercised only to the extent permitted by law."

Record, p. 13 (emphasis added). Thus, application of the law is to precede application of the waiver in the guaranty. *See Johnson v. LaPorte Bank & Trust Co.* (1984), Ind.App., 470 N.E.2d 350.

security agreement are still in effect. *Carney v. Central National Bank of Greencastle*, (1983) Ind.App., 450 N.E.2d 1034. But a distinction must be made between the waiver of pre-default disposition of collateral when the guarantor is still only secondarily liable and post-default treatment of collateral when the guarantor is actually facing primary liability and is entitled to fair treatment in the reduction of that liability. *See Commercial Discount Corp. v. King, supra*, 515 F.Supp. 988. It is this post-default disposition that is protected by the terms of Article 9 and which we deem may not be waived. We fail to see how the fact that McEntire contracted to become absolutely liable under his unconditional guaranty can in any way alter the unwaivable mandate for notice under I.C. 26–1–9–501(3).[4] *See United States v. Willis, supra*, 593 F.2d 247 (defense of commercial reasonableness); *Commercial Discount Corp. v. King, supra*, 515 F.Supp. 988; *Walter E. Heller & Co., v. Wilkerson, supra*, 627 P.2d 773 (defense of commercial reasonableness under Illinois law).

### Commercial Reasonableness

 For the same reasons we have held McEntire entitled to reasonable notification of the disposition of the collateral, so is he entitled to raise the defense of commercial reasonableness. I.C. 26–1–9–504(3). As this is a question of fact, *Hall v. Owen County State Bank, supra*, 175 Ind.App. 150, 370 N.E.2d 918, it would not have been amenable to summary judgment. Regardless of whether McEntire had been entitled to notice, this error is cause for reversal.

Our decision to reverse does not bar the Bank's action for a deficiency judgment. Instead, the Bank must simply hurdle the two defenses erected by McEntire

while it presents its case. First, it has the burden of proving that the sale was held in a commercially reasonable manner. After having established that point, and as a consequence of having failed to notify McEntire, it must then prove "that the reasonable value of the collateral at the time of the sale was less than the amount of the debt." *Id.* 370 N.E.2d at 928. (This must be established by credible objective evidence other than the opinions of the Bank's employees. *Id.*) To this end, we

Reverse and remand for proceedings not inconsistent with this opinion.

CONOVER and YOUNG, JJ., concur.

---

4. Again, the parties recognized the distinction between pre-default and post-default disposition by including two separate waiver provisions in the guaranty, one within the other. The post-default waiver (fn. 2, *supra* ) was within a generalized waiver with regard to the collateral. As we noted before, this post-default waiver was specifically limited "to the extent permitted by law," thereby assuring us the Bank contemplated limitations upon its power to deal with the collateral once McEntire's primary obligation was triggered. *See Johnson v. LaPorte Bank & Trust Co., supra.*