**DeWayne MORRIS, Patricia Morris and DeWayne Bret Morris, Appellants (Defendants Below),**

v.

**LYONS CAPITOL RESOURCES, INC., Appellee (Plaintiff Below).**

No. 49A04–8606–CV–237.

Court of Appeals of Indiana, Fourth District.

July 15, 1987.

James S. Kowalik, Hopper & Opperman, Indianapolis, for appellants.

Christopher E. Baker, P. Frederick Pfenninger, Rubin & Levin, Indianapolis, for appellee.

YOUNG, Judge.

DeWayne Morris, Patricia Morris and DeWayne Bret Morris appeal the entry of a $76,688.57 summary judgment in favor of

Lyons Capitol Resources, Inc. The Morrises raise the following issues:

1) whether the trial court erred in determining as a matter of law that the lease between them and Loral Corporation was not intended to create a security interest and therefore was not subject to the requirements of the Uniform Commercial Code;

2) whether the trial court erred in determining as a matter of law that Lyons' sale of the equipment was conducted in a commercially reasonable manner;

3) whether the trial court erred in awarding Lyons $25,656.26 in late fees after Lyons had taken possession of the equipment; and

4) whether the trial court erred in awarding Lyons $7,500.00 in attorney fees.

We reverse and remand.

The entry of summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories, admissions, affidavits and testimony show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Rules of Procedure, Trial Rule 56(C). Evidentiary matters before the trial court are to be construed in the light most favorable to the nonmoving party. *Board of Aviation Commissioners of St. Joseph County v. Hester* (1985), Ind.App., 473 N.E.2d 151. Even if no genuine issue of material fact exists, we may reverse the summary judgment upon determining that the trial court incorrectly applied the law to the existing facts. *McEntire v. Indiana Nat. Bank* (1984), Ind.App., 471 N.E.2d 1216.

The uncontradicted evidence and the evidence most favorable to the Morrises shows that in 1981 they entered into an agreement with Loral Corporation concerning the "lease" of agricultural equipment. This agreement was immediately assigned to Baldwin United Leasing Company. By this agreement, the Morrises agreed to pay $113,010.00 in "rent" after making a down payment of $10,136.00 for equipment valued at $90,912.20. The Morrises also agreed to pay the insurance, taxes, and license fees as well as make any necessary repairs. Although the insurance proceeds would be available to the Morrises to repair the equipment should it be damaged, the Morrises agreed to pay any amount required for repairs which exceeded the insurance proceeds. Baldwin could collect a five percent late charge for any payment not received within ten days of the date it became due. Upon default, Baldwin could repossess the equipment and recover all rentals due and to become due, including the residual value of the equipment, plus all costs of repossession, collection, storage, and expenses incurred in enforcing its rights. At the end of the lease term, the Morrises could renew the lease for one year at the fair rental value of the equipment or purchase the equipment at its fair market value.

Baldwin apparently assigned the lease to Lyons and upon the Morrises' default, Lyons informed DeWayne Morris of the breach and told him that the Morrises would be liable for any deficiency following repossession. When DeWayne was informed that he would have a right to bid on the equipment at the sale, he replied that the Morrises would not bid as they could not afford the equipment and saw no change in the future. The Morrises delivered the equipment to Lyons' agent on June 23, 1983, leaving an unpaid balance of $71,699.00. Although the equipment was advertised for sale in various trade magazines at $60,000.00, it sold, without specific notice to the Morrises, at a private sale for $44,000.00. This sale occurred approximately ten months after the Morrises delivered the equipment to Lyons.

Lyons brought suit for a deficiency judgment and was awarded a summary judgment for $79,202.53. Upon the Morrises' original motion to correct errors, the court revised its judgment and entered summary judgment in favor of Lyons for $76,688.57. The Morrises' second motion to correct errors was denied and this appeal ensued.

The Morrises first contend that the trial court erred in determining as a matter of law that the lease was not intended to create a security interest. We agree.

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation.... Unless a lease or consignment is intended as a security, reservation of title thereunder is not a "security interest".... Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

IND. CODE 26–1–1–201(37).

In this case, the lease[1] does contain an option to purchase. We cannot say as a matter of law, however, that the Morrises could have exercised the option for nominal consideration. Nominal consideration has been held to exist where the option price is insubstantial in relation to the fair market value of the property at the time when the option arises and where the price is nominal in absolute terms. *Matter of Marhoefer Packing Co., Inc.,* (7th Cir.1982), 674 F.2d 1139, 1144. Because the option in this case entitled the Morrises to purchase the equipment at its fair market value, the option price cannot be held to be insubstantial in relation to the fair market value at the time the option would have arisen. Furthermore, the record does not contain clear evidence of what the fair market value of the property would have been at the time the option was to be exercised. Hence, we cannot determine whether the option price would have been nominal in absolute terms.

■ Although an option to purchase for no additional or nominal consideration conclusively establishes that a lease was intended as security, IC 26–1–1–201(37)(b), it is only an example of facts that may be relevant in making such a determination. *United Leaseshares v. Citizens Bank & Trust* (1984), Ind.App., 470 N.E.2d 1383, 1387. Other relevant facts include the total amount of rent the lessee is required to pay, whether the lessee acquires any equity in the property, the useful life of the leased goods, the nature of the lessor's business[2] and which party is responsible for the payment of taxes, insurance and other expenses normally associated with ownership.

1. Lyons' contends that the express language of the agreement which recites the terms "lease," "lessor," "lessee," "leasing," and "rental" creates an unambiguous contract and therefore parol evidence is not admissible to alter its terms and the construction of the contract is a question of law. While we agree that the construction of an unambiguous contract is a question of law, *McEntire v. Indiana Nat. Bank* (1984), Ind.App., 471 N.E.2d 1216, 1222, IC 26–1–1–201(37)(b) was enacted so that security agreements disguised as leases would be governed by the same rules as other security interests. *United Leaseshares v. Citizens Bank & Trust* (1984), Ind.App., 470 N.E.2d 1383, 1387. The use of lease terms in these agreements therefore rarely has been held to be controlling of whether the lease was intended as security. *See* 76 A.L.R.3rd 1, § 5 and cases cited therein.

Lyons also contends that the Morrises' failure to state in their response to the following request for admission that the lease was a sale with a security interest constitutes an admission that the lease was not intended as security:

The attached Exhibit A is a true, exact and authentic copy of the original lease executed by and between Loral Corporation and the defendants, by which defendants were leased agricultural equipment on or about March 3, 1981.

The Morrises' admission to this request does not constitute an admission for the same reasons that the use of lease terms in such agreements do not control the disposition of the issue of whether the lease was intended as security. Furthermore, the Morrises stated in a later response that they did "not admit as a matter of law that lease agreement may be construed as a simple lease agreement." (R. 126) Furthermore, it is interesting to note that Lyons referred to the Morrises as "buyer" in their complaint. (R. 3) The use of this term could be construed as admission on Lyons' part that the lease was, in fact, disguised as a security agreement.

2. From the fact that Loral Corporation immediately assigned the agreement to Baldwin, it could be inferred that Loral supplied the equipment and Baldwin supplied the financing. Such an arrangement indicates that Baldwin was essentially purchasing the equipment from Loral in order to provide financing while retaining a security interest. *See McEntire v. Indiana Nat. Bank* (1984), Ind.App., 471 N.E.2d 1216, 1222.

*Id.* Additionally, we have considered which party bears the risk of loss, the extent of the lessee's liability upon default and whether the option price is less than 25% of the list price of the leased goods.[3] *McEntire v. Indiana Nat. Bank* (1984), Ind.App., 471 N.E.2d 1216, 1222. A sufficient number of the above facts are present in this case to indicate that the lease between the Morrises and Loral was intended as security.

■ The Morrises were required to pay $123,146.00 over a five year term for equipment worth $90,919.20, a total rent figure which appears to equal the cost of the equipment plus interest. *See McEntire v. Indiana Nat. Bank* (1984), Ind.App., 471 N.E.2d 1216, 1222. Additionally, the Morrises were responsible for the payment of insurance premiums, taxes, and license fees. *Id.* Although insurance proceeds were to be available to the Morrises for repairs, they were required to pay for any repairs which exceeded the insurance proceeds. Thus, the Morrises bore all risk of loss beyond the insurance limits. *Id.* Lastly, the Morrises were liable for all rents due and to become due, including the residual value of the equipment plus all costs of repossession, collection, storage and expenses the lessor incurred in enforc-

ing its rights. *Id.* The presence of these facts are sufficient for us to conclude and we therefore do conclude, as a matter of law, that the lease was intended as security. The trial court's opposite conclusion therefore was erroneous.[4] *Id.*

■ The Morrises also contend that the trial court erred in determining as a matter of law that Lyons' sale of the equipment was conducted in a commercially reasonable manner. We also must agree with this contention. The defense of commercial reasonableness is a question of fact and thus the entry of summary judgment upon the issue is inappropriate. *McEntire v. Indiana Nat. Bank* (1984), Ind.App., 471 N.E.2d 1216, 1226, *citing Hall v. Owen County State Bank* (1977), 175 Ind.App. 150, 370 N.E.2d 918. The entry of summary judgment on the issue of commercial reasonableness therefore constitutes reversible error.

The trial court erred in entering summary judgment on the issues of whether the lease was intended as security and whether Lyons' sale of the equipment was conducted in a commercially reasonable manner. It therefore follows that its award of damages[5] and attorney fees to Lyons was in error. The case is reversed and remanded

---

3. This is referred to as the "economic realities test." *McEntire v. Indiana Nat. Bank* (1984), Ind.App., 471 N.E.2d 1216, 1222. Some jurisdictions implement this test in determining whether the option price constitutes "nominal consideration." *See* 76 A.L.R.3rd 1, § 8(b) and cases cited therein. We, however, only have considered the relationship of the option price to the list price of the equipment as a factor in determining whether the lease was intended as security after being unable to conclude whether the option price constituted nominal consideration. *McEntire v. Indiana Nat. Bank* (1984), Ind.App., 471 N.E.2d 1216, 1222. In the present case, the option price was the fair market value of the equipment and no evidence was presented as to what the fair market value of the equipment would have been at the end of the lease term in order to compare it to the list price. While we therefore cannot conclude that the option price was less than 25% of the list price, it is interesting to note that the equipment sold for $44,000.00 approximately three years into the five year term when the market for such equipment appeared to be declining.

4. It would have been helpful to the trial court for the Morrises' counsel to set forth these specific facts in his motion in opposition to summary judgment. They are contained in the agreement itself, however, which was attached to Lyons' complaint. As the agreement therefore was a part of the pleadings, the trial court was presented with sufficient facts to show that Lyons was not entitled to judgment as a matter of law. Ind. Rules of Procedure, Trial Rule 56(C).

5. The trial court awarded damages for late fees which accrued after the Morrises returned the equipment. We find nothing in the contract which allowed Lyons to continue collecting late fees subsequent to repossession. As we have reversed on other issues, however, we will not discuss the possible error which may have occurred in the trial court's damage award by including such fees.

for further proceedings consistent with this opinion.

Reversed and remanded.

CONOVER, P.J., and GARRARD, J., concur.