# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 14 2019, 8:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Adam J. Sedia
Hoeppner, Wagner & Evans, LLP
Merrillville, Indiana

ATTORNEYS FOR APPELLEE

Jeffery A. Johnson
Hilary R. Johnson
May Oberfell Lorber
Mishawaka, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gordon Cummins and Richard Bizzaro, <br><br> *Appellants-Defendants,* <br><br> v. <br><br> 1st Source Bank, <br><br> *Appellee-Plaintiff* | February 14, 2019 <br><br> Court of Appeals Case No. 18A-PL-911 <br><br> Appeal from the St. Joseph Circuit Court <br><br> The Honorable John E. Broden, Judge <br><br> Trial Court Cause No. 71C01-1708-PL-263 |

**May, Judge.**

[1]   Gordon Cummins and Richard Bizzaro (collectively, "Appellants") appeal the trial court's entry of summary judgment in favor of 1st Source Bank ("Bank"). Appellants present two issues:

1) Whether the trial court erred when it entered summary judgment against Bizzaro as to liability under the guaranty despite Bizzaro's designation of evidence supporting his denial that he executed the guaranty; and

2) Whether the trial court erred when it entered summary judgment as to damages because Bizzaro and Cummins created a genuine issue of material fact regarding the reasonableness of Bank's efforts to mitigate the damages.

We affirm in part,[1] reverse in part, and remand.

# Facts and Procedural History

On March 7, 2017, All Resort Coach, Inc. ("All Resort") entered into an agreement ("Lease") with Bank to lease a "2017 Freightliner Turtle Top Odyssey XL 31 Passenger" bus ("Bus"). (App. Vol. II at 115.) Bizzaro, on behalf of All Resort, signed the "Master Equipment Lease Agreement[,]" (id. at 106), and the "Equipment Lease Supplement – TRAC[.]" (Id. at 111.) To secure the amounts due under the Lease, Appellants in their individual capacities each separately signed a "Guaranty of Payment." (Id. at 21, 23.) Both guaranties provided the signatory would "unconditionally guarantee[ ] to Bank the full and prompt payment and performance when due of all Obligations due and to become due to Bank." (Id. at 21, 23.)

---

[1] Cummins does not challenge the trial court's entry of summary judgment against him as to liability. We accordingly summarily affirm the trial court's ruling as to Cummins' liability.

[3] On April 28, 2017, All Resort filed for bankruptcy. All Resort defaulted on the Lease. On August 2, 2017, Bank sent notice to Appellants the Lease account was in default. Bank also sent a "Demand and Acceleration Notice" to Appellants informing them the "remaining unpaid lease balance and indebtedness . . . [were] immediately due and payable[.]" (*Id*. at 25.) The amount due, "as of August 14, 2017[, was] $216,660.83." (*Id*.) Appellants did not cure the default.

[4] In the Bankruptcy Court, Bank filed a "Motion to Terminate the Automatic Stay or For Adequate Protection." (*Id*. at 100.) Therein, Bank requested the Bankruptcy Court "terminate the automatic stay to allow [Bank] to exercise its rights in the Bus as an Owner and Lessor, including the right to recover possession of the Bus and to terminate the Debtor's leasehold interest." (*Id*. at 103.) The Bankruptcy Court granted Bank's motion. Bank repossessed Bus and advertised it for sale. Bank received three offers for Bus and sold it to the highest bidder for $137,500.

[5] Bank filed a complaint seeking to enforce the guaranties signed by Appellants. On September 29, 2017, Bank filed a motion for summary judgment but it was denied for failure to follow local rules. On October 30, 2017, Appellants filed an answer and a motion to extend their time to respond to the motion for summary judgment. The trial court granted Appellants' motion and vacated its denial of Bank's motion for summary judgment. On November 30, 2017, Appellants filed their response to Bank's motion for summary judgment. Both Appellants and Bank designated evidence.

[6] As to liability under the guaranty, Appellants contended neither had a "specific recollection" of signing the guaranty paperwork. (App. Vol. II at 69, 96, 98.) Bizzaro further asserted his signature was "not in fact [his] signature, but a stamped signature [and he] did not sign the alleged guaranty, nor did [he] stamp his signature . . . and [he did] not recall ever giving anyone authorization to sign or stamp [his] signature on any guaranty to 1st Source." (*Id.* at 99.)

[7] Then, as to damages, Appellants contended Bank had not properly mitigated its damages. Appellants designated evidence Bus had been appraised to have a value between $229,200 to $234,200. Appellants both asserted, based on their "long experience in the transportation industry . . . buses do not depreciate upon sale or lease in the same immediate way that personal vehicles do." (*Id.* at 70, 97, 99.)

[8] On January 24, 2018, the trial court held a hearing wherein counsel for both parties presented argument based on the designated evidence. The trial court concluded:

> 6. The Court **FINDS** that the issue of [Bank's] obligation under the law to mitigate its damages is moot as [Bank] did indeed sell the bus and apply all the relevant sales proceeds to the debt owed by [Appellants].
>
> 7. Turning next to [Appellants'] assertion that they do not recall signing the guaranties in question or do not recall authorizing the use of a signature stamp, the Court finds the case of *Harper v. Kampschaefer*, 549 N.E.2d 1067 (Ind. Ct. App. 1990) to be persuasive. The Court in *Harper* held that "a plaintiff's testimony that she could not recall a discussion regarding the

existence of a dangerous condition does not 'contradict' other deponents' testimony establishing that such a discussion occurred." *Harper*, at 1070.

8.     In the present case, the Court **FINDS** that [Appellants'] hazy memories about whether or not they signed or authorized the signing of the absolute guaranties are not sufficient to contradict or create a question of fact in regard to the authenticity of the documents attached to [Bank's] Complaint evidencing the existence of [Appellants'] signatures on the absolute guaranties.

(*Id*. at 198) (emphasis in original).

[9] The trial court granted Bank's motion for summary judgment and found Appellants to be "obligated to 1st Source Bank, jointly and severally, with respect to their unconditional Guaranties of Payment in the sum of One Hundred Nine Thousand One Hundred Nineteen and 32/100 Dollars ($109,119.32), plus interest, expenses, and attorneys' fees." (Appealed Order at 1.)

# Discussion and Decision

[10] Our standard of review for summary judgment is well-established:

We review summary judgment *de novo*, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A

fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id*. (internal citations omitted).

The initial burden is on the summary-judgment movant to "demonstrate the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id*. at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Therefore, for the trial court to properly grant summary judgment, the movants must have "made a *prima facie* showing that their designated evidence negated an element of the nonmovants' claims, and, in response, the nonmovants must have failed to designate evidence to establish a genuine issue of material fact." *Cox v. Mayerstein-Burnell Co., Inc.*, 19 N.E.3d 799, 804 (Ind. Ct. App. 2014). We will affirm a trial court's decision on summary judgment if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *United Rural Elec. Membership Corp. v. Ind. Mich. Power Co.*, 648 N.E.2d 1194, 1196 (Ind. Ct. App. 1995), *trans. denied*.

[11] At issue here are guaranties that appear to be signed by Appellants in their individual capacities to secure the lease for All Resort. A guaranty is defined as "an undertaking by a guarantor to answer for payment of some debt, or performance of some contract, of another person in the event of default." 38 Am. Jur. 2d Guaranty § 1 (2019). A guaranty is "a conditional promise to pay because the guarantor promises to pay only on the condition that the principal debtor fails to pay and is immediately enforceable if that event occurs." *Id.*

[12] "The rules governing the interpretation and construction of contracts generally apply to the interpretation and construction of a guaranty contract." *S-Mart, Inc. v. Sweetwater Coffee Co.*, 744 N.E.2d 580, 585 (Ind. Ct. App. 2001), *trans. denied*. The guarantor's liability is determined by the terms of the contract. *Id.*

> The terms of a guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within its terms. The contract of a guarantor is to be construed based upon the intent of the parties, which is ascertained from the instrument itself read in light of the surrounding circumstances.

*Id. at* 585-86 (internal citations omitted).

[13] Here, the trial court granted summary judgment in favor of Bank because it found Appellants had executed unconditional guaranties, Bank's "obligation under the law to mitigate its damages [wa]s moot as [Bank] did indeed sell the bus and apply all the relevant sales proceeds to the debt[,]" (App. Vol. II at 198), and Appellants' "hazy memories[,]" (*id.*), did not create a question of fact.

# Signatures

[14] Bizzaro contends a genuine issue of material fact exists as to whether he had signed the guaranty. A signature on a written instrument is "deemed to be established and the instrument, if otherwise admissible, shall be deemed admitted into evidence in the action without proving its execution *unless* execution be denied under oath in the responsive pleading or by an affidavit[.]" T.R. 9.2(B) (emphasis added). "Trial Rule 9.2 does not conclusively establish the genuineness of a signature." *Miller v. NBD Bank, N.A.*, 701 N.E.2d 282, 285 (Ind. Ct. App. 1998). It merely establishes the instrument and deems it admitted if the signature is not denied. T.R. 9.2(B). Therefore, Bizzaro's signature on the guaranty instrument is admissible without further proof that he signed it, provided he does not deny doing so. However, Bizzaro did deny signing it and designated an affidavit to that effect.

[15] Affidavits designated at summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Ind. Trial Rule 56(E). Bizzaro submitted an affidavit, with his brief in opposition to Bank's motion for summary judgment, denying his signature on the guaranty.

[16] Bank asserts Bizzaro, in his affidavit, merely states he did not recall affixing, or causing to have affixed, his signature to the guaranty and that such a statement "was not a denial under oath." (Br. of Appellee at 13.) However, Bizzaro filed an affidavit denying not just his memory of signing the guaranty but also

alleging he "did not sign the alleged guaranty, nor did [he] stamp [his] signature on the alleged guaranty, and [he] do[es] not recall ever giving anyone authorization to sign or stamp [his] signature on any guaranty to 1st Source." (App. Vol. II at 99.)

[17] A "perfunctory and self-serving" affidavit is enough to overcome a motion for summary judgment if the affidavit presents sufficient evidence "to raise a factual issue to be resolved at trial." *Hughley*, 15 N.E.3d at 1004. While Bank may have further evidence to dispute Bizzaro's account, the evidence Bizzaro designated is sufficient to overcome summary judgment. *See Miller*, 701 N.E.2d at 287 (questions regarding the genuineness of a signature, even if affidavits are presented that could lead one to doubt that genuineness, are a question of fact for the fact-finder). Accordingly, we reverse the grant of summary judgment to the Bank as to Bizzaro's liability under the guaranty, and we remand for further proceedings as to the authenticity of Bizzaro's signature on the document.

## Mitigation

[18] Appellants also challenge the trial court's entry of summary judgment for Bank as to the amount of damages due to Bank under the guaranty. Appellants assert Bank was required to mitigate its damages in the same manner it would have been required to do if collecting from All Resort and Bank did not reasonably mitigate damages because Bank sold Bus for approximately $100,000 less than its appraised value.

[19]     Bank counters that it has no duty to mitigate its damages because Appellants signed unconditional guaranties.[2] Bank concedes, however, that it did attempt to mitigate damages by regaining possession of Bus from the bankruptcy proceedings and selling it "in a commercially reasonable manner." (Br. of Appellees at 11.)

[20]     The trial court determined that, regardless whether Bank had a duty to mitigate, Bank did in fact attempt to mitigate damages. A duty to exercise care and skill may be imposed on one who, by affirmative conduct, assumes to act, even gratuitously, for another. *Masick v. McColly Realtors, Inc.,* 858 N.E.2d 682, 692 (Ind. Ct. App. 2006). The actor must specifically undertake to perform the task he is charged with having performed negligently, for without actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully. *Id.* In other words, the assumption of a duty creates a special relationship between the parties and a corresponding duty to act in a reasonably prudent manner. *Id.* The existence and extent of such duty are ordinarily questions for the trier of fact, but when there is no genuine issue of material fact, assumption of a duty may be determined as a matter of law. *Id.*

---

[2] Bank cites *Kruse v. Nat'l Bank of Indianapolis*, 815 N.E.2d 137 (Ind. Ct. App. 2004), in support of its assertion that it has no duty to mitigate damages. To be sure, the *Kruse* panel did state Kruse "ha[d] not raised a genuine issue of material fact as to [National Bank of Indianapolis'] failure to mitigate damages[,]" *id.* at 151, but we found no legal holding therein about a creditor not having a duty regarding mitigation. Rather, the panel restated Kruse's argument that a creditor does not have to "attempt collection from the principal debtor before looking to the guarantor." *Id.* at 150 (*quoting McEntire v. Indiana Nat'l Bank*, 471 N.E.2d 1216, 1223 (Ind. Ct. App. 1984), *reh'g denied, trans. denied*). Thereafter, the panel held Kruse had "failed to designate any evidence to factually support his assertion that NBI did not attempt to mitigate its damages." *Id.* Therefore, *Kruse* is unpersuasive as to the issue for which Bank cites it.

Here, although Bank asserts it did not have a duty to mitigate, it, in fact, undertook steps to mitigate its damages. Bank accordingly either had or assumed a "duty to exercise care and skill." *See id*. Accordingly, Bank had an obligation to act reasonably when mitigating damages, *see id*., and "[a] party's reasonableness in mitigating damages is a question for the trier of fact[.]" *Fischer v. Heymann*, 12 N.E.3d 867, 870 (Ind. 2014), *reh'g denied*. Appellants designated evidence wherein they asserted the value of the bus was between $229,200 to $234,200. Appellants contend Bank did not act reasonably when it sold the bus for $137,500. This contention is enough to create a genuine issue of material fact as to whether Bank acted reasonably in its mitigation efforts. *See id*. Therefore, the trial court erred when it entered summary judgment for Bank on the issue of damages.

# Conclusion

Because the designation of Bizzaro's affidavit offering an alternate version of the facts is sufficient to defeat summary judgment as to Bizzaro, we reverse and remand for the trial court to conduct a trial as to Bizzaro's liability under the guaranty. Cummins has not asserted an argument on appeal as to his liability under the guaranty, such that the trial court's summary judgment to Bank on that issue stands. Appellants' designation of evidence created a genuine issue of material fact regarding the damages due under the guaranty because, regardless whether Bank had a duty to mitigate damages, Bank assumed the duty and was required to do so in a reasonable manner. Accordingly, we affirm the entry of

summary judgment for liability against Cummins, reverse the entry of summary judgment for liability against Bizzaro, reverse the entry of summary judgment as to damages against Appellants, and remand to the trial court for proceedings consistent with this opinion.

[23] Affirmed in part, reversed in part, and remanded.

Baker, J., and Robb, J., concur.