James Phillip **VADAS** and John Vadas,
Appellants–Respondents,

v.

Rita **VADAS**, Appellee–Petitioner.

No. 45A04–9901–CV–18.

Court of Appeals of Indiana.

May 19, 2000.

P. Jeffrey Schlesinger, Crown Point, Indiana, Attorney for Appellants.

Lynn Hammond, Merrillville, Indiana, Attorney for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Respondent James Vadas ("James") challenges the trial court's Decree of Dissolution in this consolidated appeal. We affirm.

### Issues

James raises three issues on appeal which we consolidate and restate as:

I. Whether the trial court lacked personal jurisdiction over John Vadas ("Father"), James's father, and therefore erred by joining Father as a party to the dissolution proceeding; and,

II. Whether the trial court abused its discretion in dividing the marital estate where it: (A) included certain real property titled solely to Father in the marital estate and (B) determined that a near equal division of personal property had been effectuated between the parties and awarded each party the personal property in his or her possession.

### Facts

The facts most favorable to the judgment indicate that James and Rita Vadas ("Rita") were married on April 13, 1995. Both parties had been married previously. Before her marriage to James, Rita owned a home located in Dyer, Indiana. The

parties lived in this home for a few months at the beginning of their marriage. The couple then moved into the marital home located at 11924 Cline Avenue in Crown Point, Indiana. In February of 1996, Rita sold her home in Dyer, Indiana, realizing net proceeds of twenty-five thousand one hundred fifty-eight dollars and fifty-five cents ($25,158.55). Rita deposited the proceeds from the sale of her house into the couple's joint checking account. James had not contributed any money to said account. James and Rita subsequently used a majority of the money in their joint account to remodel the marital home on Cline Avenue. The Cline Avenue residence was originally owned by James prior to his marriage to Rita. In 1993, two years before his marriage to Rita, James sold his home to Father in order to pay an outstanding money judgment James owed to his first wife as a result of their divorce. James thereafter continued to live at the Cline Avenue residence despite the fact it was titled to Father. Father admitted at trial that he had always intended for James to regain title to the Cline Avenue residence and that he had agreed to "resell" the house to James once he "got on his feet." (R. 144.) Moreover, James, Rita and Father all testified that the agreement between them was that James and Rita would buy back the Cline Avenue home from Father and that it would be jointly titled to James and Rita.

The trial court made the following pertinent findings and conclusions in its Decree of Dissolution regarding the parties' marital residence and personal property:

9. That [Rita] owned real estate located at 2637 South Lakewood Drive, Dyer, Indiana at the time the parties married in April, 1995.

10. That the parties resided in [Rita's] home while they began extensive remodeling work to [James's] real estate located at 11924 Cline Avenue, Crown Point, Indiana.

. . . .

13. That [Rita] sold her real estate located in Dyer, Indiana on February 7, 1996 and realized net proceeds of Twenty–Five Thousand One Hundred Fifty–Eight and $^{55}/_{100}$ Dollars ($25,158.55) from the sale.

14. That [Rita] deposited all of her net proceeds into the parties' joint checking account ... on February 7, 1996.

15. That checks totaling Thirty–Two Thousand Forty–Four and $^{77}/_{100}$ Dollars ($32,044.77) were written on the parties' joint checking account during the marriage for supplies, appliances, and materials for the real estate located in Crown Point, Indiana.

16. That [James] acknowledges ownership of the marital real estate located in Crown Point, Indiana as shared with John E. Vadas, his father.

. . . .

19. That a second mortgage was taken out on the [Cline Avenue] property on September 28, 1997 with Household Finance Corporation. The second mortgage was executed by [James] and his father after this action for dissolution of marriage was filed and while a Restraining Order was in place prohibiting either party from encumbering any asset of the marriage. That the second mortgage lien is Eighteen Thousand Dollars ($18,000.00) and said second mortgage note is signed by [James] and his father ... as co-borrowers.

. . . .

24. That [Rita] and [James] at all times during the marriage paid all expenses for the marital estate including, but not limited to, the first mortgage, taxes, and insurance.

25. That due to the parties paying for the first mortgage and [Father's] release of claim to any interest in the marital real estate, [James] has

taken the interest deduction for tax purposes on the first mortgage. That in 1994, [James] took Nine Thousand Two Hundred Four Dollars ($9,204.00) as the mortgage interest deduction on his federal tax return.

26. That the parties, due to their exclusive payment of the first mortgage, took the interest deduction on the first mortgage when they filed their only joint federal and state tax returns in 1995.

27. That [James] also took the interest deduction from the first mortgage on his individual tax returns filed in 1996 even though [Rita] resided in the marital real estate through May, 1997 and would be entitled to claim some portion of same for her taxes.

28. That the 1098 Form regarding the mortgage interest deduction was issued to [James].

29. That ... [Father] testified that he was in complete agreement that [Rita] and [James] receive the interest deductions as he himself never paid any of the mortgage payments.

30. That ... [Father] testified that [James] has always lived in the marital real estate.

31. That ... [Father] testified that he did not invest any of his money into remodeling the marital real estate.

. . . .

51. That [Rita] relied on [James's] and [Father's] representations that her contribution in excess of Twenty–Five Thousand Dollars ($25,000.00) to remodel the marital real estate would alleviate any tax burden as the property would be deeded to [Rita] and [James] before the tax was due.

. . . .

67. That [Rita] removed items from the marital home, some of which belonged to [Rita] prior to the marriage and some of which were purchased during the marriage.

68. That [Rita] also has jewelry which is valued at Two Thousand Four Hundred Dollars ($2,400.00). The court finds that a near equal division of personal property has been effectuated by the parties and awards each party the personal property in their respective possession.

. . . .

70. The Court finds that equal division of the marital assets is just and reasonable pursuant to Indiana Code [section] 31–15–7–4 and Indiana Code [section] 31–15–7–5.

. . . .

73. The Court finds that the gross marital estate is Ninety–Seven Thousand Five Hundred Seventy–Four and 76/100 Dollars ($97,574.76) and that the net marital estate is Eighty–Nine Thousand Forty–Four and 56/100 Dollars ($89,044.44). That an equal division would be Forty–Four Thousand Five Hundred Twenty–Two and 22/100 Dollars ($44,522.22) to each party.

74. The Court finds that to equalize an equal division of the marital estate, [James] and [Father] shall pay to [Rita] the sum of Thirty–Five Thousand Two Hundred Sixty–One and 54/100 Dollars ($35,261.54).

75. The Court orders that a Judgment shall be entered against [James] and [Father] in favor of [Rita] in the sum of Thirty–Five Thousand Two Hundred Sixty–One and 54/100 Dollars ($35,261.54). The Court orders that said Judgment shall attach to the real estate commonly known as 11924 Cline [Avenue], Crown Point, Indiana....

(R. 99–106.)

### Procedural History

Rita filed a verified petition for dissolution of the parties' marriage on May 30,

1997. On August 4, 1997, Rita filed a Motion to Join Father to the proceedings and served this motion on counsel for James. However, there is no evidence that Father was ever served with a copy of the Motion to Join and James never filed a response to Rita's Motion to Join Father. Additionally, neither James nor Father ever filed any pleadings objecting to Rita's Motion to Join. The trial court did not rule upon Rita's Motion to Join before the commencement of the final hearing.

The final hearing began on January 7, 1998, and was continued on March 2, 1998. Father voluntarily attended both days of trial, even though he was never subpoenaed to appear by either party, and was subsequently called to testify as a witness by Rita. Father did not object to being called as a witness at any time before or during the final hearing.

The trial court entered its Decree of Dissolution on August 5, 1998. Pursuant to James's petition requesting specific findings of fact and conclusions of law, the trial court set forth the following pertinent findings and conclusions regarding Rita's Motion to Join Father to the proceedings:

32. That on August 4, 1997, [Rita] filed her Motion to Join John E. Vadas, father of [James], in the dissolution proceeding.

33. That [Rita] joined [Father] pursuant to Indiana Trial Rule 20(A)(2) as [Father's] economic interest in the marital real estate was at issue in the dissolution proceeding.

34. That [Father] was served the Motion to Join by mailing same to [James's] counsel on or about July 31, 1997.

35. The final hearing herein was begun on January 7, 1998 and that [Father] appeared for the hearing on said date.

. . . .

37. That counsel for [Rita] had not subpoenaed [Father] to appear at this hearing and that [Father] appeared voluntarily.

38. That [Rita's] counsel began presentation of evidence and called [Father] to testify herein.

39. That [Father] filed no objections to [Rita's] motion to join him.

40. That [Father] made no oral objection to his being joined in this cause of action prior to his testimony, during his testimony, and no objection has been made by [Father] since the close of evidence in this matter.

41. That [Father] formally appeared at hearing, took an oath, and testified in this matter all without objection.

42. Therefore, [Father] is a necessary party to this litigation pursuant to Trial Rule 20(A)(2) and he shall be joined as a necessary party.

(R. 102.)

James filed a Praecipe for Appeal on September 4, 1998. On September 4, 1998, Father filed a Motion to Correct Errors claiming for the first time that the trial court had erred by joining him as a party to the dissolution proceedings. Father's Motion to Correct Errors was denied by the trial court on December 8, 1998. However, no copy of said order is contained in the record. James's and Father's Petition to Consolidate Appeals was granted by this Court on February 26, 1999. The following appeal ensued.

**Discussion and Decision**

*I. Personal Jurisdiction and Joinder*

*Standard of Review*

Our supreme court has explained that "[j]urisdiction is the legal power to entertain any matter or proceeding, and the power to act must be derived from the Constitution or from some statute." *Twyman v. State*, 459 N.E.2d 705, 707 (Ind. 1984). Jurisdiction in this state embraces three essential elements: (1) jurisdiction of the subject matter, (2) jurisdiction of the person, and (3) jurisdiction of the particu-

lar case. *Id.* Jurisdiction of the person refers to the particular parties who are brought before the court, and the right of that particular court to exercise jurisdiction over those parties. *Id.*

The law is clear that a party not otherwise subject to the personal jurisdiction of a court may nonetheless voluntarily submit himself to that court's jurisdiction by either seeking affirmative relief or by failing to object in a timely manner to the jurisdiction of the court. *Hotmix & Bituminous Equipment, Inc. v. Hardrock Equipment Corp.,* 719 N.E.2d 824, 830 (Ind.Ct.App.1999). When a party fails to object to the personal jurisdiction of a court in a timely manner, the party will not be allowed thereafter to challenge the court's personal jurisdiction. *Schneider v. Schneider,* 555 N.E.2d 196, 199 (Ind.Ct. App.1990). This preclusion is predicated on the theory of waiver. *Id.*

Indiana Trial Rule 20 governs the permissive joinder of parties and provides, in pertinent part, that:

All persons may be joined in one (1) action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of, or arising out of, the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Ind. Trial Rule 20(A)(2); see also *United of Omaha v. Hieber,* 653 N.E.2d 83, 86 (Ind.Ct.App.1995). The purpose of Indiana Trial Rule 20(A) is to promote trial convenience, expedite claims, and avoid multiple lawsuits. *Id.* at 87. A proper party has been defined as a party who does not have an interest in the controversy between the immediate litigants but who has an interest in the subject matter of the litigation, which may be conveniently settled in the suit. *Euler v. Seymour Nat'l Bank,* 519 N.E.2d 1242, 1244

(Ind.Ct.App.1988). The determination of whether joinder should be granted rests within the trial court's discretion. *McCoy v. Like,* 511 N.E.2d 501, 504 (Ind.Ct.App. 1987). Thus, we will reverse only for an abuse of discretion. *Id.*

### Argument and Analysis

James claims that the trial court erred in joining Father as a party to the dissolution proceeding. Specifically, James argues that Father was never served with a copy of Rita's Motion to Join. Thus, James claims that the trial court never obtained personal jurisdiction over Father. James concludes, therefore, that the trial court's decision to join Father to the dissolution proceeding is void and must be set aside by this Court.

Rita counters that her method of service, namely, sending Father's copy of her Motion to Join to James's attorney, was reasonably calculated to inform Father of her intention to join him as a party to the pending dissolution proceedings. Rita further argues that even if her method of service was defective, such error was harmless in light of the fact that Father voluntarily appeared at and participated in the final hearing without objection to the trial court's jurisdiction.

In the case at bar, the undisputed evidence shows that Father voluntarily appeared in court for both days of the final hearing despite the fact he was never subpoenaed by either party. Additionally, Father participated in the proceedings by testifying as a witness without objection. Moreover, James failed to file a response to Rita's Motion to Join. James also failed to object at trial to Father participating in the proceeding. Based on the foregoing, we hold that Father voluntarily submitted himself to the jurisdiction of the trial court and thus is now precluded from challenging the trial court's personal jurisdiction on appeal.[1] *See Hotmix & Bituminous*

---

1. We note that defect of service is susceptible to cure or waiver. *Trook v. Lafayette Bank and Trust Company,* 581 N.E.2d 941 (Ind.Ct. App.1991). Thus, because we have deter-

*Equipment, Inc.*, 719 N.E.2d at 830 (stating the law is clear that a party not otherwise subject to the personal jurisdiction of a court may nonetheless voluntarily submit himself to that court's jurisdiction by failing to timely object to the court's jurisdiction); *cf. Shafer by Shafer v. Lieurance*, 659 N.E.2d 229, 231 (Ind.Ct.App.1995) (holding that despite faulty service of process, action was still viable when party filed an answer without challenging the defective service thereby waiving the defect); *Jennings v. Jennings*, 531 N.E.2d 1204, 1206 (Ind.Ct.App.1988) (holding that while personal jurisdiction may be waived, the trial court erred in determining party waived right to challenge the jurisdiction of the trial court in light of facts party did *not* appear or participate in the proceeding). We further hold that the trial court did not abuse its discretion in joining Father as a party to the dissolution proceedings pursuant to Indiana Trial Rule 20(A) in light of the facts Rita was claiming she had a substantial economic interest in the Cline Avenue real estate, said property was titled to Father, and the property was encumbered by a second mortgage held jointly by Father and James at the time of the final hearing. *See In re Marriage of Dall*, 681 N.E.2d 718, 724 (Ind.Ct.App. 1997) (stating that a party to a divorce who claims that the marital estate includes an equitable interest in real property titled in a nonparty should move to join the nonparty and to have the issue determined within the divorce proceedings).

## II. Division of Marital Estate

### Standard of Review

■■■ The division of marital assets lies within the sound discretion of the trial court. *Bloodgood v. Bloodgood*, 679 N.E.2d 953, 956 (Ind.Ct.App.1997). Thus, we will reverse only if that discretion is abused. *Id.* "An abuse of discretion occurs

if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Wells v. Collins*, 679 N.E.2d 915, 916 (Ind.Ct.App.1997). As a reviewing court, we may not reweigh the evidence or assess the credibility of witnesses, and we consider only the evidence most favorable to the trial court's disposition of marital property. *In re Marriage of Dall*, 681 N.E.2d at 720. In addition, the party challenging the trial court's property division must overcome a strong presumption that the court complied with the statutory guidelines. *Nill v. Nill*, 584 N.E.2d 602, 604 (Ind.Ct.App. 1992). This presumption is one of the strongest presumptions applicable to our consideration on appeal. *In re Marriage of Coyle*, 671 N.E.2d 938, 942 (Ind.Ct.App. 1996).

■■■ As stated earlier, the trial court made specific findings of fact and conclusions of law at the request of James, pursuant to Indiana Trial Rule 52(A). Our standard of review is therefore two-tiered. *Heiligenstein v. Matney*, 691 N.E.2d 1297, 1299 (Ind.Ct.App.1998). "We first determine whether the evidence supports the findings of fact and then whether those findings support the judgment." *Id.* On review, we do not set aside the trial court's findings or judgment unless clearly erroneous. T.R. 52(A). A finding is clearly erroneous when there is no evidence or inference reasonably drawn therefrom to support it. *Shively v. Shively*, 680 N.E.2d 877, 882 (Ind.Ct.App.1997). The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.* We may, however, affirm the judgment on any legal theory supported by the findings if that theory is consistent with "all of the trial court's findings of fact and the inferences

mined that Father voluntarily submitted himself to the jurisdiction of the trial court thereby waiving any allegation of error based on lack of personal jurisdiction, we need not

address James's allegation regarding whether Rita's method of service of process on Father was defective.

reasonably drawn from the findings[,]" and if we deem such a decision prudent in light of the evidence presented at trial and the arguments briefed on appeal. *Mitchell v. Mitchell*, 695 N.E.2d 920, 924 (Ind.1998).

### Argument and Analysis

#### A. Inclusion of Cline Avenue Residence in Marital Estate

James contends that the trial court erred in determining that James and Rita had an equitable interest in the Cline Avenue property, which was titled to Father, and in dividing said interest between the parties. In support of his contention, James directs our attention to *In re Marriage of Dall*, 681 N.E.2d 718 (Ind.Ct.App. 1997). Rita asserts that the trial court properly included the Cline Avenue residence in the marital estate and directs our attention to *Sovern v. Sovern*, 535 N.E.2d 563.

In *Sovern*, the property in question consisted of the marital residence and an automobile body shop. There, the property was titled to Husband's parents who were not joined as parties in the litigation. The facts supporting the judgment reveal that while the parents held legal title to the property, the money used to construct the property was derived from the Soverns' marital resources. The Soverns held themselves out as the owners of the property, the house was insured in both their names, and their homeowner's policy reflected no insurable interest held by the parents. Also, the parents claimed no interest in the property and were willing at all times during the Soverns' marriage to deed the property to them.

Based on these facts, the dissolution court included the real estate in the marital estate, awarded Husband the residence and the body shop, and awarded Wife a lump sum to compensate her for her interest in the property. In affirming the award, this Court stated that "bare legal title alone does not eliminate either the property or the investment thereon from being part of the marital estate to be considered by the Court in arriving at an equitable division." *Sovern*, 535 N.E.2d at 565. However, several years later, in *Dall*, another panel of this Court declined to follow *Sovern*. In so doing, the *Dall* court concluded that the holding in *Sovern* "should be confined to its unique and narrow facts and should not be followed." *Id.* at 721.

In *Dall*, the property at issue in the dissolution proceeding was the marital residence, which was titled to Wife's parents. Wife's parents were also not joined as parties to the dissolution proceeding. Wife's father purchased the lot, helped in the construction of the home, and paid all the contractors and subcontractors for the building materials, spending a total of approximately ninety-three thousand dollars ($93,000.00). However, Husband and Wife both contributed their labor to the construction of the home.

When the lot in *Dall* was first acquired, all parties agreed that title would eventually be conveyed to Husband and Wife sometime in the future. However, Wife's mother refused the couple's request to do so during the construction of the house and the parties were unable to reach any agreement after that time. Additionally, a practice was established whereby Wife's father would write his daughter a check in the amount of eight hundred thirty-three dollars ($833.00) each month and then she would subsequently issue her father a check in the same amount in order to establish a cost basis for the home should it ever be sold.

The dissolution court included the home in the marital estate, awarded the property to Wife, and ordered Wife to pay Husband a monetary judgment, secured by a mortgage on the marital residence, for his interest in the real estate. Wife appealed, claiming that the trial court erred by including the residence in the marital estate. Husband argued that according to *Sovern*, a dissolution court may properly determine that a divorcing couple owns an equitable

interest in real property titled to a nonparty, and include the value of that interest in the marital estate.

In reversing the trial court, the *Dall* court found that neither Husband nor Wife held a vested interest in the marital residence and that their purported equitable interest in the property was indeterminate. The *Dall* court further stated that case law had long established that an unvested interest in property is not divisible as a marital asset and therefore held that an equitable interest in real property titled to a third person *not joined in the proceedings,* although claimed by one or both of the divorcing parties, should not be included in the marital estate. Instead, the *Dall* court opined, any equitable interest may be considered by the dissolution court when dividing the couple's actual marital assets in accordance with Indiana Code section 31–11.5–11(C.)[2]

After reviewing the record, we agree with Rita that the facts in the case at bar are quite similar to *Sovern* and distinguishable from *Dall.* Here, as in *Sovern,* it was marital resources, more specifically, the proceeds obtained as a result of the sale of Rita's home in Dyer, Indiana, which were used to fund the renovations to the Cline Avenue home. Additionally, James and Rita paid for all of the expenses associated with the property, including the mortgage, homeowner's insurance and property taxes, as well as claimed the mortgage interest they paid as a deduction on their federal and state income taxes. Moreover, James, Rita and Father all testified that the agreement between the parties was that once James and Rita were financially stable, the Cline Avenue residence would be sold back to James and Rita and titled in both their names. We need not resolve the inherent conflict between the holdings in *Sovern* and *Dall* today, regarding whether the value of the property titled to third parties not joined to the dissolution proceeding may be included in the marital estate, because of the one significant factor that distinguishes these cases from the case at bar; namely, that Father was properly joined to, and voluntarily participated in, the dissolution proceedings.

 It is the dissolution court's responsibility to determine whether a given piece of property can be included in the marital estate. *Dall,* 681 N.E.2d at 723. Moreover, Indiana's "one pot" theory specifically prohibits the exclusion of any assets in which a party has a vested interest from the scope of the trial court's power to divide and award. *Hann v. Hann,* 655 N.E.2d 566, 569 (Ind.Ct.App.1995). While record or legal title to real estate is the highest evidence of ownership, equitable titles in real estate are recognized. *Hughes v. Cook,* 126 Ind.App. 103, 130 N.E.2d 330, 335 (1955). Further, it is well settled that legal title and equitable title to one parcel of real estate may be vested in different persons, and, an equitable interest may also be a fixed and vested property right. *Hinds v. McNair,* 413 N.E.2d 586, 598 (Ind.Ct.App.1980).

The record before us contains substantial evidence of probative value supporting the trial court's conclusion that, regardless of how the Cline Avenue real estate was legally titled, Rita and James held a vested, present interest in said property through their joint efforts and monetary contributions. Thus, the trial court could reasonably have concluded that the Cline Avenue property was a marital asset to be included in the marital estate and divided between the parties. Moreover, the trial court had personal jurisdiction over Father, who was properly joined to the dissolution proceeding, and all three parties had a vested interest in the Cline Avenue property. Thus, the dissolution court properly determined that it was vested with the power to decide whether the Cline Avenue

---

**2.** We note that this statute was repealed by P.L. 1–1997, SEC. 157 and recodified at

Indiana Code Section 31–15–7–4.

property was a marital asset, as well as to decide the property interests of all three parties in said real estate. Finally, our review of the record leaves us convinced that the evidence supports the trial court's findings and ultimate decision to include the net equity of the Cline Avenue property in the marital estate for equal division between Rita and James.

### B. Division of Personal Property

■ James's final allegation of error is that the trial court failed to achieve an equal division of the parties' personal property by erroneously valuating said assets. We disagree.

■ Initially, we note that the standard for reviewing the trial court's valuation of property is the same standard for reviewing the court's division of property. *Hacker v. Hacker,* 659 N.E.2d 1104, 1108 (Ind.Ct.App.1995). Thus, the valuation of assets is committed to the trial court's sound discretion, and, as the reviewing court, we will not reweigh the evidence, but will consider it in a light most favorable to the judgment. *Id.* Moreover, the judgment of the trial court will be affirmed if we conclude the findings support the judgment and are not clearly erroneous. *Nill v. Nill,* 584 N.E.2d 602, 604 (Ind.Ct. App.1992). A judgment is clearly erroneous where a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We further note that the burden of producing evidence as to the value of the assets rests upon the parties to the dissolution proceeding and the trial court is not obligated to complete the complex task of valuing the assets without such evidence. *In re Marriage of Coyle,* 671 N.E.2d at 945.

Although James and Rita presented evidence regarding the value of some of their personal assets, there were several items with either unknown or conflicting values. Rita testified that she had brought substantial personal property into the marriage, including but not limited to a living room suite consisting of a sofa, loveseat, cocktail table and end tables (valued at $1,500.00), kitchen table and chairs (value unknown), computer (valued at $500.00), Kirby vacuum (valued at $1,000.00), television (valued at $500.00), VCR (value unknown), cookware (valued at $500.00), dishes (value unknown), bedroom furniture for herself and her children (value unknown), linens (value unknown), holiday decorations (value unknown), washing machine (value unknown), dryer (value unknown), microwave (value unknown), personal items (value unknown), clothing and jewelry (values unknown). (R. 191–92, 196.) When Rita left the marital home she took several of these items with her, including the living room suite, vacuum, computer, holiday decorations, television, cookware, linens, personal items, clothing, and jewelry. (R. 158.) Rita also took an entertainment center, valued at one thousand dollars ($1,000.00) and her daughter's bed, valued at three hundred dollars ($300.00), both of which had been purchased during the marriage. (R. 158.) Rita left several items she had brought into the marriage for James, including her kitchen table and chairs, washing machine (which was given to James's sister-in-law), dryer, dishes, VCR and microwave (which were given to James's son) and her bedroom furniture. Additionally, James retained the new stove, refrigerator, dishwasher and microwave that the parties had recently bought and which the parties agreed were valued at approximately three thousand dollars ($3,000.00).

James failed to provide the trial court with any evidence regarding the unknown values of the items left in his possession. Additionally, our review of the record reveals that while James asserted Rita took $5,300.00 in household furnishings and $3,200.00 in additional items, James failed to provide the court with any evidence as to the existence of these assets or with specific ascertainable values for any particular item, other than Rita's engagement ring. Moreover, at trial, James testified that he "believe[d] it would be fair" for

Rita to keep the personal property already in her possession and, likewise, for him to keep the personal property already in his possession. (R. 415.) The trial court agreed with this conclusion and so do we.

The trial court's disposition of marital property is to be considered as a whole, not item by item. *Krasowski v. Krasowski*, 691 N.E.2d 469, 473 (Ind.Ct. App.1998). Moreover, the party challenging the trial court's property division must overcome a strong presumption that the court considered all of the evidence and properly applied the statute. *Coffey v. Coffey*, 649 N.E.2d 1074, 1076 (Ind.Ct.App. 1995). James has failed to carry his burden of proof and instead asks this Court to reweigh the evidence. This we cannot do. The trial court's finding that the parties had effectuated a near equal division of personal property was rationally supported by the evidence before the court and thus was not clearly erroneous. *See Quillen v. Quillen*, 671 N.E.2d 98, 103 (Ind.1996) (stating that where the parties fail to present evidence as to the value of assets, it will be presumed that the trial court's decision was proper). Accordingly, we find no error.

Affirmed.

MATTINGLY, J., and BROOK, J., concur.