Jan T. WALKER and Candice Walker,
Appellants–Plaintiffs,

v.

Michael D. McTAGUE and Marilyn
McTague, Appellees–
Defendants.

No. 79A05–0002–CV–48.

Court of Appeals of Indiana.

Oct. 16, 2000.

Jay P. Kennedy, Kroger, Gardis & Regas, Indianapolis, Indiana, Attorney for Appellants.

David A. Rosenthal, Rosenthal, Grieves, O'Bryan & Meyer, Lafayette, Indiana, Attorney for Appellees.

## OPINION

ROBB, Judge

Jan T. Walker and Candace Walker appeal from the trial court's Findings of Fact and Conclusions of Law entering judgment for them on their Complaint against Michael McTague and Marilyn McTague. We affirm.

*Issues*

The Walkers raise several issues for our review, which we consolidate and restate as one: whether the trial court's Findings of Fact and Conclusions of Law regarding amounts due and owing to the Walkers from the McTagues are contrary to the evidence.[1]

*Facts and Procedural History*[2]

In 1993, the Walkers owned eating and drinking establishments known as Pete's and Pete's Annex in West Lafayette, Indiana. In July 1993, the Walkers sold the businesses to McTague Properties NFT, Inc. ("McTague Properties"), a company owned by the McTagues. The parties entered into a conditional sales contract for sale of the business and personal property, and a commercial lease for lease of the real estate. Pursuant to the terms of those documents, McTague Properties was to pay a total purchase price of $375,000 plus nine percent interest for the businesses, with $100,000 down and monthly payments of $2,314.11. At the conclusion of the sixty month term of the contract, McTague Properties was to make a balloon payment of the entire remaining balance. The lease agreement provided for rent payments of $3,700 per month. As additional consideration for the transaction between the Walkers and McTague Properties, the McTagues signed a personal guaranty for the sums due to the Walkers pursuant to the contract for sale and commercial lease. Therein, the McTagues waived all defenses.

At various times throughout the five-year term of the contract, McTague Properties fell behind in its obligations to the Walkers. In order to resolve one such instance of default, McTague Properties executed a security agreement granting the Walkers a first priority security interest in virtually all of its assets. The Walkers perfected the security interest by filing the appropriate documents with the Secretary of State. Finally, just a few days before the balloon payment was due, McTague Properties filed bankruptcy. McTague Properties' outstanding indebtedness to the Walkers was then in excess of $250,000.

As part of the bankruptcy case, the Walkers and McTague Properties entered into a stipulated entry for relief from stay, which was approved by the bankruptcy judge, providing that McTague Properties would have 120 days to market the business and seek a qualified purchaser for the assets. In the meantime, the Walkers would assume management of the business pending sale or auction. The Walkers were to "use their best efforts to effectively manage the assets for the benefit of the estate and its creditors." They agreed not to incur any additional indebtedness in the operation of the business, although they were authorized to pay administrative obligations of the estate, such as rent and insurance premiums. The Walkers also were to account to McTague Properties, the court, the trustee, and all creditors on a monthly basis regarding the operation of the business.

1. The Walkers also raise the issue of whether the trial court erred in denying their Motion to Allow Late Filing of the Praecipe. However, we note that this issue has already come before the Motions Panel of this court pursuant to the Walkers' motion to bifurcate the procedural and substantive issues presented by this case. The Motions Panel issued an order allowing the case to proceed on its merits and directing the parties to prepare their briefs on the underlying substantive issues. Therefore, we need not reconsider the procedural issue here, but direct our discussion to the substantive issues presented by the parties' briefs.

2. Neither party has supplied us with a Statement of Facts which comports with our rules of appellate procedure. Our rules require "[a] statement of facts relevant to the issues presented for review," Ind. Appellate Rule 8.3(A)(5), which should be a concise *narrative* summary of the facts in a light most favorable to the judgment. *Summit Account & Computer Serv. v. RJH of Florida, Inc.,* 690 N.E.2d 723, 724 n. 1 (Ind.Ct.App.1998), *trans. denied.* By contrast, both parties have provided us with an enumerated list of facts, rather than a narrative summary.

Upon the Walkers' assumption of the business, it was closed for approximately sixty days for repairs required by the health department. The Walkers failed to provide the monthly accounting required under the bankruptcy court's order, and borrowed approximately $30,000 for use in operating the business. Thereafter, McTague Properties' bankruptcy petition was dismissed, but the Walkers remained in possession and control of the business. The Walkers then placed notices in Lafayette and Indianapolis newspapers of a sealed bid auction of the business assets. This was the only notice given by the Walkers; neither McTague Properties, the McTagues themselves, nor their attorney received notice of the auction. The sole bidder for the business was J.C.J., LLC, a limited liability company controlled by the Walkers. J.C.J., LLC submitted a bid for $50,000.

Thereafter, the Walkers filed the instant action against the McTagues on the guaranty, seeking full payment of sums allegedly remaining due and owing under the contract, in an amount in excess of $250,-000. Following a hearing, the trial court entered Findings of Fact and Conclusions of Law granting judgment for the Walkers in the amount of $7,400, which amount represents two months of unpaid rent still owed by McTague Properties at the time of the bankruptcy. The Walkers now appeal.

### Discussion and Decision

### I. Standard of Review

Immediately prior to the hearing on the Walkers' complaint, counsel for the McTagues requested that the court enter findings of fact and conclusions of law. Our standard of review is therefore two-tiered: we first determine whether the evidence supports the findings of fact and then whether those findings support the judgment. *Carnahan v. Moriah Property Owners Ass'n, Inc.*, 716 N.E.2d 437, 443 (Ind.1999). On review, we do not set aside the trial court's findings or judgment unless they are clearly erroneous. Ind. Trial R. 52(A). A finding is clearly erroneous when there is no evidence or inference reasonably drawn therefrom to support it. *Vadas v. Vadas*, 728 N.E.2d 250, 257 (Ind. Ct.App.2000). The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.* We may, however, affirm the judgment on any legal theory supported by the findings if that theory is consistent with "all of the trial court's findings of fact and the inferences reasonably drawn from the findings[,]" and if we deem such a decision prudent in light of the evidence presented at trial and the arguments briefed on appeal. *Mitchell v. Mitchell*, 695 N.E.2d 920, 924 (Ind.1998).

### II. Findings and Conclusions Regarding Deficiency

The trial court found that the rent on the business was current through August 30, 1998, and that the parties agreed that the contract balance as of September 25, 1998, was $256,499.21. The court also found that the Walkers presented no evidence of additional expenses over and above that amount. The court concluded that Walker had violated the bankruptcy court's order by taking possession and control of the business and operating it as they pleased, which impaired the collateral, and that they had conducted a commercially unreasonable sale of the business. Thus, the trial court concluded that the McTagues were only liable under the guaranty for two months of unpaid rent, in the amount of $7,400, and that the Walkers were entitled to retain all assets in their possession and income derived therefrom.

The Walkers first contend that the trial court's finding that the contract balance was $256,499.21 is erroneous, as well as the finding that the Walkers did not present any evidence of additional expenses. They also contend that the trial court erroneously concluded that the Walkers impaired the collateral via their actions once regaining possession of the business and

that the sale was commercially unreasonable.

### A. Findings of Fact

The trial court's Finding number 15 is that the "parties agreed the contract balance as of September 25, 1998 was $256,499.21." At the hearing, Mr. Walker testified that he had calculated the balance due and owing on the contract to be $256,499.21. Thus, there was clearly evidence to support that finding.

The trial court's Finding number 16 is that "Walker, at trial, presented no evidence of any further expenses." Walker testified that when he regained possession of the business, there was back rent still due, and that he had incurred attorney fees throughout the process of trying to collect the unpaid balances and regain the property. He also testified that he paid sewer taxes, property taxes, liquor bills, and sales tax for the business. However, from the time of retaking possession of the business, the Walkers proceeded as if the business belonged to them, despite the bankruptcy court order which only authorized the Walkers to assume management of the business for the benefit of all creditors. Mr. Walker testified that he had built sales up since reopening, although he never testified to actual profit/loss figures. Thus, the trial court reasonably could have inferred that the expenses testified to by Mr. Walker were expenses incurred on his own behalf, and that the profits from the business covered some or all of those expenses. Although it is not so specifically worded, we believe that the trial court's finding referred to the absence of evidence of expenses for which the Walkers would be entitled to reimbursement pursuant to the Contract for Sale, rather than expenses of operating the business and thus, we cannot say that this finding is clearly erroneous.

### B. Conclusions of Law

The trial court concluded that "since notice was not provided to the [McTagues], notwithstanding the auction advertisements ..., the court concludes [the Walk-

ers] failed to provide for a commercially reasonable sale as required by IC 26–9–1–504. [The Walkers] failed to prove that the reasonable value of the collateral was less than the amount of the debt." The trial court also concluded that, because the Walkers obtained possession of the business pursuant to a court order which required them to manage and account for the assets but failed to do so and continued possession even after the bankruptcy proceeding was concluded, the Walkers' acts "are viewed as impairment of collateral which has not been waived, either on the Note or the Security Agreement." The Walkers contend that the trial court's conclusions that the sale of the business was an unreasonable sale and that the McTagues' impairment of collateral defense was not waived are clearly erroneous.

### 1. Commercially Unreasonable Sale

Indiana Code section 26–1–9–504 provides that "[a] secured party after default may sell, lease, or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." Ind.Code § 26–1–9–504(1). The statute further provides that:

> Disposition of the collateral may be by public or private proceedings.... Sale or other disposition may be ... at any time and place and on any terms, but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed, after default, a statement renouncing or modifying his right to notification of sale.

Ind.Code § 26–1–9–504(3). A secured party who seeks a deficiency judgment after failing to notify the debtor as required by the statute faces a rebuttable presumption that the reasonable value of the collateral at the time of the sale was equal to the amount of the debt. *Vanek v. Indiana Nat'l Bank*, 540 N.E.2d 81, 83 (Ind.Ct.App. 1989), *aff'd*, 551 N.E.2d 1134 (Ind.1990). To rebut that presumption, the secured party must prove that the disposition of the collateral was commercially reasonable and that the collateral's value was less than the debt. *Id.*

 In this case, the Walkers are the secured party by virtue of the security agreement entered into by the Walkers and McTague Properties, and the business is the collateral. The McTagues, as guarantors of McTague Properties' indebtedness, are considered to be debtors along with McTague Properties. *See Brown v. Indiana Nat'l Bank*, 476 N.E.2d 888, 892 (Ind.Ct.App.1985), *trans. denied* ("This district recently has held an unconditional guarantor of liabilities arising from an equipment lease which is really a security agreement is a 'debtor,' and thus entitled to notice under IC 26–1–9–504(3).... As these parties would be called upon to pay any deficiency in the event of default, they too, like the primary debtor, are entitled to notice of disposition of the collateral."). Thus, the Walkers were required by statute to give notice of the sealed bid auction to the McTagues. Mr. Walker testified that he advertised the sale in the newspaper. However, a letter purportedly written to the McTagues' attorney to inform him of the sale was never admitted into evidence because the McTagues' attorney stated that it was addressed incorrectly and he had never received it. Thus, the

Walkers withdrew the exhibit. The trial court correctly proceeded on the premise that notice was not given to the debtors, and required the Walkers to establish that the disposition of the collateral was commercially reasonable and that the collateral's value was less than the debt.[3]

In *Hall v. Owen County State Bank*, 175 Ind.App. 150, 370 N.E.2d 918 (1977), this court addressed for the first time in Indiana the effect of failing to give the required statutory notice. Hall and his son-in-law, Reed, began a trucking business and financed the necessary equipment with approximately $56,000 in loans from the Bank in return for promissory notes and a security interest in the equipment. Several years later, Hall became delinquent in his payments, and the Bank demanded possession of the collateral. Reed delivered the collateral, consisting primarily of the company's trucks, to the Bank. A used car and truck dealer was at the Bank a few days later and saw the trucks in the Bank parking lot. He made a one-time, take-it or leave-it offer of $25,000 in cash. The Bank notified Reed and explained the terms of the sale, to which Reed agreed. The Bank credited the entire $25,000 to the amount due on Hall and Reed's notes, and then filed an action against Hall and Reed for the amount still due. The trial court awarded a deficiency judgment against Hall in the amount of $2,328.25 plus attorney fees. Hall appealed, arguing that he was not given notice of the sale and that the Bank was therefore not entitled to an action for deficiency judgment. This court held that Hall was entitled to notice, and that the effect of the failure to give such notice was to require the creditor to prove that the

---

**3.** Although the McTagues signed a guaranty waiving defenses, this court in *McEntire v. Indiana Nat'l Bank*, 471 N.E.2d 1216 (Ind.Ct. App.1984), noted that "a distinction must be made between the waiver of pre-default disposition of collateral when the guarantor is still only secondarily liable and post-default treatment of collateral when the guarantor is actually facing primary liability and is entitled

to fair treatment in the reduction of that liability." *Id.* at 1226. Such post-default disposition is protected by the terms of Article ·9 and may not be waived. *Id.* Thus, despite the terms of the guaranty, the McTagues are entitled to raise the issues of lack of notice and the commercial reasonableness of the sale of the collateral.

reasonable value of the collateral at the time of the sale was less than the amount of the debt and that the sale was performed in a commercially reasonable manner. *Id.* at 928–29. In that case, the court held that the Bank met its burden. *Id.* at 931.

■ As for the first prong, proving the reasonable value of the collateral was less than the debt, the court stated:

> In meeting the burden outlined above, the creditor may not merely rely on the value which he received from the repossession sale . . . [and] may not rely solely on testimony of his credit manager or his other employees as to their opinions of the fair value of the collateral. Instead, the creditor must introduce other additional credible objective evidence of value.

*Id.* at 928. Thus, the creditor must prove by credible, independent evidence that the sale price of the collateral was equal to the fair value of the collateral, but was less than the indebtedness.

■ As for the second prong, the reasonableness of the sale, the court stated that because the UCC does not give a specific definition of what constitutes a "commercially reasonable sale," the determination as to whether or not a sale was reasonable will generally depend upon the circumstances of each particular case, and is a question of fact. *Id.* at 929. The primary factor to be considered is the price received by the secured party. "In cases where a fair sale price was received, the debtor will have suffered no injury and normally will have no complaint. . . . In cases where a fair sale price was not received, the other items to be considered will generally be relevant to the extent that they may have prevented a fair price or contributed to an unfair price." *Id.* at 929. Indiana Code section 26–1–9–507, however, makes it clear that the sale price is not the only item to be considered:

> The fact that a better price could have been obtained by a sale at a different

time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner . . .

Ind.Code § 26–1–9–507(2). Thus, even though a low sale price itself is insufficient to overturn a sale, closer scrutiny will generally be given sales in which there is a substantial difference between the sale price and the fair value to determine whether there were legitimate causes for the low price or whether the low price was caused by the secured party's failure to proceed in a commercially reasonable manner. *Hall,* 370 N.E.2d at 929.

■ Other factors to be considered in deciding whether a sale was commercially reasonable include: 1) whether the collateral is sold on a retail or wholesale market; 2) the number of bids received or solicited; and 3) that the time and place of the sale is reasonably calculated to bring a satisfactory turnout of bidders. *Id.* at 929–30. In deciding whether or not the disposition of collateral was accomplished in a commercially reasonable manner all of the relevant factors should be considered together. *Id.* at 930.

■ Here, the Walkers presented evidence, and the trial court found, that the value of the business was $250,000, which is approximately the amount of the debt, found to be $256,499.21. However, the Walkers sold the business for only $50,000. The closed-bid auction through which the business was sold was conducted without any notice to the McTagues, and it resulted in only one bid being submitted. In *Hall,* the court stated that although it "would not hold sales invalid as a matter of law where only 1 or 2 bids were received, such sales must receive the closest scrutiny and should be declared invalid where there is evidence of collusion, self-dealing, or bad faith." *Id.* at 930. The one bid which was submitted was from a company owned or controlled by the Walkers. Thus, the sale was conducted without the required notice and basically resulted in a

sale to the Walkers at a drastically reduced price. Viewing these facts together, we cannot say that the trial court erred in concluding that the sale was not conducted in a commercially reasonable manner and denying the Walkers a deficiency judgment based upon the proceeds from the sale.

### 2. Impairment of Collateral

Finally, the Walkers contend that the trial court erred in determining that the McTagues' impairment of collateral defense had not been waived. However, because the trial court also determined, and we have agreed, that the sale of the business was not commercially reasonable, and because such determination supports the trial court's judgment that the Walkers were not entitled to any deficiency judgment, but only to the unpaid rent accrued prior to their assumption of the business, the impairment of collateral conclusion is superfluous, and we need not address it.

### Conclusion

The trial court's findings of fact and conclusions of law are not clearly erroneous and support the trial court's judgment that the only amounts for which the McTagues are personally liable to the Walkers pursuant to the guaranty are two months' unpaid rent. We therefore affirm the judgment of the trial court.

Affirmed.

MATHIAS, J., and MATTINGLY, J., concur.